JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiff's Motion for Summary Judgment [DE 35]

## I.  INTRODUCTION

On February 27, 2020, Elliot McGucken ("Plaintiff") sued Pub Ocean Limited ("Defendant"), alleging two claims: (1) direct copyright infringement and (2) contributory copyright infringement.

Now before the Court is Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court **DENIES** Plaintiff's Motion and **ENTERS JUDGMENT FOR DEFENDANT**.

## II. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

Plaintiff is an accomplished photographer. (Def.'s Resp. to Pl.'s Undis. Facts ¶ 1, ECF No. 36-1). In 2019, Plaintiff photographed several vantage points, angles, and views of a unique environmental event—a lake that had appeared in Death Valley. (*Id.* ¶¶ 2, 5). Several photos are pictured below:



JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |





Plaintiff shared these photos on Instagram, (*id.* ¶ 3), and he owns their copyright, (*id.* ¶ 6). He has licensed these photos to several publications such as *The Daily Mail*, *Smithsonian Magazine*, and *Live Science*. (*Id.* ¶ 7).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

Defendant owns several websites including: *magellantimes.com*, *absolutehistory.com*, *maternityweek.com*, *scribol.com*, and *newravel.com*. (Fabricius Decl ¶ 4, ECF No. 36-2). These websites cater to various audiences. *Magellantimes.com*, for example, targets history buffs. (*Id.*) While *maternityweek.com* pertains mostly to parenting and family. (*Id.*)

Defendant hires freelance writers to provide content for its websites. (*Id.* ¶ 3). In one of these instances, it hired Suzi Marsh. (*Id.* ¶ 5). Marsh wrote an article titled, *A Massive Lake Has Just Materialized in the Middle of One of the Hottest Places on Earth*. (*Id.*) This article contained several of Plaintiff's photographs, along with many photos that were not Plaintiff's. (Def.'s Resp. to Pl.'s Undis. Facts ¶ 8).

Defendant then published the article on the five websites identified above on April 15, 2019. (*Id.* ¶ 9). The articles appeared alongside other advertisements. (*Id.* ¶ 12). Defendant did not contact Plaintiff to request a license before using the photograph in its article. (*Id.* ¶ 18). The article did, however, credit Plaintiff by hyperlinking to his Instagram page. (Fabricius Decl. ¶ 7).

Plaintiff then sued Defendant. When Defendant learned of the lawsuit on May 11, 2020, it removed the article from its websites. (*Id.* ¶ 8).

### III.  JUDICIAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that no evidence supports the non-moving party's case. *See Celotex*, 477 U.S. at 325.

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324.

## IV.   DISCUSSION

The sole issue before the Court is whether Defendant's article constitutes fair use. If the Court finds Defendant's article was not fair use, then it will be liable for violating Plaintiff's copyright. But if the article's use was fair, the doctrine shields Defendant from liability.

Whether an item qualifies for fair use is a mixed question of law and fact. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). Courts often adjudicate these issues on summary judgment when there are no genuine issues of material fact. *See, e.g., id.*; *L.A. News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1120 (9th Cir. 1997).

As has been described by courts higher than this one, the fair use doctrine has been considered "the most troublesome in the whole of copyright." *Monge*, 688 F.3d at 1170 (quoting *Dellar v. Samuel Goldwyn, Inc.*, 104 F.2d 661, 662 (2d Cir. 1939) (per curiam)). The defense "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair." *Monge*, 688 F.3d at 1170. The party asserting fair use bears the burden of proof. *Id.* (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985)).

The Copyright Act of 1976 states, "the fair use of copyrighted work . . . for purposes such as criticism, comments, news reporting, teaching . . . is not an infringement of copyright." 17 U.S.C. § 107. To determine whether an item qualifies as fair use, courts examine these factors:

(1) purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

*Id.* Though courts routinely decide fair use issues, some commentators have noted that the flexibility of the fair use factors effectively renders them useless. *See, e.g., Princeton Univ. Press v. Michigan Document Serv., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) ("The doctrine has been said to be 'so flexible as virtually to defy definition.'"). Still, this Court soldiers on to face the fair use doctrine.

    **A.**    **Purpose and Character of the Use**

            *1.*    *News reporting*

17 U.S.C. § 1707 lists "news reporting" as a protected category of fair use. Defendant argues that its article qualifies as "news" because it notifies and comments on the unusual amount of rainfall that occurred in Death Valley in 2019, and the noticeable changes it brought in the region. (*See* Opp'n at 12). While some may remark that rain falling in a desert is not particularly "newsworthy," the park's more than 1.5 million visitors would say otherwise. National Park Service, *Death Valley*, NPS (Mar. 6, 2019), https://www.nps.gov/deva/learn/news/2018-visitation.htm.

But just because the article may be "news," does mean that it is per se fair use. "The fact that an article arguably is 'news' and therefore a productive use is simply one factor in a fair use analysis." *Harper & Row*, 471 U.S. at 540. In other words, "fair use has bounds even in news reporting, and no per se 'public interest' exception exists." *Monge*, 688 F.3d at 1173. So the Court considers the other characteristics of Defendant's use.

            *2.*    *Transformation*

Whether a work is "transformative" turns on whether "the new work 'supersedes the objects' of the original creation . . . , or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.*

A bit of caselaw guides the Court's analysis. The Court centers on the trilogy of *Los Angeles News Service* cases from this circuit. All these cases involved footage of the attack on Reginald Denny, which the *Los Angeles News Service* had captured on video.

In the first case, the Ninth Circuit explained that a defendant's use of voiceover in L.A. News's original video footage was not transformative, since it did not add "anything new to what made [the plaintiff's] work valuable—a clear, visual recording of [the Reginald Denny video]." 108 F.3d at 1122. The second case, involved *Reuters*, a news platform that had rebroadcasted *L.A. News*'s video. *L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 990 (9th Cir. 1998). There, the Ninth Circuit held

Case 2:20-cv-01923-RGK-AS   Document 48   Filed 07/27/21   Page 6 of 10   Page ID #:944

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

that the rebroadcasting, even though it had a news reporting purpose, "was not very transformative" since the defendant did not "explain the footage, edit the content of the footage, or include editorial comment." *Id.* at 993. The trilogy's final act, *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 929 (9th Cir. 2002), pertained to CBS-owned Court TV, which used *L.A. News*'s footage in teaser trailers to promote its coverage of the ensuing trial. *Id.* at 929. In explaining the reasoning behind *CBS Broadcasting*, the Ninth Circuit clarified that "arrangement of a work in a photo montage . . . can be transformative where copyrighted material is incorporated into other material." *Monge*, 688 F.3d at 1174. Such as when "the use of a brief segment of a riot clip in a promotional video was deemed to be fair use." *Id.* (explaining *CBS Broadcasting*).

Taken together, these cases offer several broad principles. First, even in the news reporting context, simply rebroadcasting or replaying information is not transformative. *See Reuters*, 149 F.3d at 993. Nor does including surface-level alterations, such as voiceovers and written commentary outlining what is already visible to the viewer, transform a work. *KCAL-TV*, 108 F.3d at 1122. But alterations that change a piece's inherent nature, even if the exact copies are used, can be transformative. *See CBS Broadcasting*, 305 F.3d at 939–40 (holding that a video being used in a promotional trailer that included some editing for "dramatic effect" was transformative).

Perhaps most useful here is the decision in *Monge*. There, the defendant, a magazine, published six stolen photos depicting a pop singer's clandestine wedding with her manager without the singer's consent. 688 F.3d at 1169. The photos were featured in a two-page spread that offered little commentary beyond explaining the photos themselves. *Id.* For example, one line read, "In fact, a lot has been said about a supposedly secret wedding in Las Vegas, Nevada, that took place in January 2007, but until now, no one had shown photos of that memorable day." *Id.* The article was not transformative, the Ninth Circuit explained, because the magazine "did not transform the photos into a new work, [like a parody as in *Campbell*], or incorporate the photos as a part of a broader work, as in *CBS Broadcasting*." *Id.* at 1176. Instead, the magazine "left the inherent character of the images unchanged." *Id.* And its use, "wholesale copying sprinkled with written commentary—was at best minimally transformative." In the end, the Ninth Circuit concluded that the publication was not fair use.

Applying these teachings here, while not as revolutionary as moving from the light to the dark, Defendant's article was transformative. Although Defendant used Plaintiff's exact, unaltered photos, they make up only ten out of forty pictures within the article. The article also includes commentary that discusses many other topics, like the Sahara. (Article at 5, ECF No. 35-12). The usual conditions in Death Valley, including the amount of rainfall and temperature. (*Id.* at 9–13). And other natural phenomenon in the region such as a "superbloom." (*Id.* at 30). In fact, only ten of the forty-four total pages in the article discuss Plaintiff's pictures. Unlike in *Reuters*, in which a video was simply replayed to the public, the article, here, does more. It includes commentary and other pictures, not from Plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

And the added writing gives context to the photos beyond what is already apparent, unlike the commentary in *Monge* and the voiceover in *KCAL-TV*. Finally, the article discusses Death Valley's history, the natural wonders it creates, and how it does so. Even with the stich-for-stich copying of Plaintiff's photos, this is more editing and arranging than what was done in *CBS Broadcasting*, in which the Ninth Circuit found the work to be transformative.

Simply put, Defendant's article was transformative.

    3.    <u>Commercial use</u>

Commercial use is a "factor that tends to weigh against a finding of fair use" because "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Monge*, 688 F.3d at 1176 (quoting *Harper & Row*, 471 U.S. at 562). Defendant does not seem to dispute that the article was commercial in nature. It appeared next to advertisements, which generated revenue for each website it was posted on. Still, the highly transformative nature of the work reduces the importance of the commercial purpose factor. *See CBS Broadcasting*, 305 F.3d at 940 ("At the same time, though, the opening montage was the more 'transformative' of the allegedly infringing uses, which in turn reduced the importance of the commerciality of the use.").

On balance, that the article was used for a commercial purpose does not wholly negate its transformative nature. Thus, the first factor in the fair use analysis, purpose and character of the use, favors a finding of fair use.

    **B.**    <u>**Nature of the Copyrighted Work**</u>

"Under the second factor, we address two aspects of the work: the extent to which it is creative and whether it is unpublished." *Monge*, 688 F.3d at 1177 (citing *Harper & Row*, 471 U.S. at 563–64). Plaintiff's work is highly creative. Even though he captures a naturally occurring phenomenon, the various angles, lighting, and viewpoints of his photos makes them, under any definition, artistic and creative.

"This factor also considers whether the copied work is unpublished." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 455 (9th Cir. 2020). Generally, if a work is previously unpublished, that fact is a "'key, though not necessarily determinative, factor' tending to negate a defense of fair use." *Harper & Row*, 471 U.S. at 554. "But the converse is not necessarily true." *ComicMix*, 983 F.3d at 456. Keeping in mind that this factor "typically has not been terribly significant in the overall fair use balancing," this factor weighs against fair use. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

### C.  Amount and Substantiality of the Portion Used

To analyze this third factor, courts examine whether the "'quantity and value of the materials used' are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting *Folsom v. Marsh*, 9 F. Cas. 342 (No. 4,901 (CCD Mass. 1841)). Defendant included ten of Plaintiff's twelve photos. The photos were not cropped and display the "heart" of each individual copyright picture—the lake that appeared in Death Valley. *Monge*, 688 F.3d at 1178.

But that does not end the Court's analysis. The photos must be viewed in the context of the entire article. Again, these photos are a few of many others that were "selected, coordinated, [and] arranged to create an "original work of authorship"—the article. *Monge*, 688 F.3d (defining "compilation"). Plaintiff's photos were no doubt selected to showcase the ephemeral lake that appeared in Death Valley. And the lake is certainly the subject of each of Plaintiff's photos. Still, the article's additions to Plaintiff's photos express ideas (figuratively) and display images (literally) beyond what Plaintiff expressed in his photographs. This is unlike the magazine in *Monge*, in which the purpose of the entire piece was to display the wedding photos. In other words, the use of wedding photos in the article was "not just substantial, it was total." 688 F.3d at 1180. That is not the situation here.

At bottom, the other photos and commentary render the amount of Plaintiff's copyrighted images insubstantial in context. This factor therefore favors a finding of fair use.

### D.  Effect on the Potential Market

"The final fair use factor is 'the effect of the use upon the potential market for or value of the copyrighted work.'" *Id.* at 1180. While the Supreme Court has stated that this factor is "undoubtedly the single most important element of fair use," *Harper & Row*, 471 U.S. at 566, it has since backtracked this proclamation elaborating that, like the other factors, this one "may be addressed only through a sensitive balancing of interests." *Campbell*, 510 U.S. at 590 n.21. That is, when "the second use is transformative, market substitution is at least less certain, and market harm may not be so readily inferred." *Id.* at 591. But there is a greater chance of market harm when "a commercial use amounts to mere duplication of the entirety of an original." *Id.*

A market no doubt exists for Plaintiff's photos. He accrues likes on Instagram and other entities have paid to license his photos. (Def.'s Response to Pl.'s Undis. Facts ¶ 7). But Defendant's use of his photo was also transformative, muting the degree of market substitution. As an added note, Defendant published its article in April 2019, yet Plaintiff still managed to license his photos to *The Daily Mail* a month later, (*see* Burroughs Decl., Ex. 7 at 1, ECF No. 35-9). Plaintiff also licensed his photos to other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

entities throughout March 2019. (*See id.* at 30–39). Thus, Defendant's use did not seem to usurp or destroy the market for his photos, like the wedding photos in *Monge* had.

As a result, this factor also favors fair use.

### E.   Result

Three of the four factors favor fair use. The lone factor that weighs against this conclusion is generally viewed as not as important in this test. *Penguin Books*, 109 F.3d at 1402. But the Court does not reach its conclusion by mechanically applying each factor. Instead, the factors were noted, considered, and balanced. In the end, the Court concludes that the factors favor a finding of fair use.

### F.   Judgment for Defendants

"It is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion." *Kassbaum v. Steppenwolf Prod., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000). But courts must be cautious so that "the original movant has had an adequate opportunity to show that there is a genuine issue and that his or her opponent is not entitled to judgment as a matter of law." *Id.* (quoting 10A Fed. Prac. & Proc. Civ. § 2720 (4th ed. 2020)).

Here, although Defendant did not move for summary judgment, the Court enters judgment for Defendant based on in its finding that Defendant's use of Plaintiff's pictures was fair. *See Swatch Grp. Mgmt. Serv. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 93 (2d Cir. 2014) (affirming district court's sua sponte grant of summary judgment to non-moving party based on fair use).

### V.   EVIDENTIARY OBJECTIONS

In moving for, or opposing, a summary judgment motion, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Both parties have filed objections to the other party's evidence, primarily based on hearsay, lack of foundation, relevance, and improper speculation. While these objections may be cognizable at trial, on a motion for summary judgment, the Court is concerned only with the admissibility of the relevant facts at trial, and not the form of these facts as presented in the Motions. *See O'Banion v. Select Portfolio Servs., Inc.*, No. CV 1:09-00249-EJL-CWD, 2012 WL 4793442, at *5 (D. Idaho Aug. 22, 2012) ("If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay."); *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119–20 (E.D. Cal. 2006) (making the distinction

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-01923-RGK-AS | Date | July 27, 2021 |
|---|---|---|---|
| Title | *Elliot McGucken v. Pub Ocean Limited et al* | | |

between facts and evidence, Fed. R. Civ. P. 56(e), and overruling objections that evidence was irrelevant, speculative and/or argumentative).

To the extent the Court has relied on any other evidence to which the parties have objected, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED** *as moot*.

## VI.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **ENTERS JUDGMENT FOR DEFENDANT**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____